UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:23-CR-142-GFVT-MAS-02

UNITED STATES OF AMERICA            PLAINTIFF

V.            **PLEA AGREEMENT**

DIQUAN TRAVON KING            DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1, 5, and 6 of the Indictment. Count 1 charges conspiracy to distribute at least 10 grams of fluorofentanyl, at least 40 grams of fentanyl, and a quantity of oxycodone, in violation of 21 U.S.C. § 846; Count 5 charges possession with intent to distribute at least 10 grams of fluorofentanyl and at least 40 grams of fentanyl, in violation of 21 U.S.C. § 841(a)(1); and Count 6 charges possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(1). The Defendant also agrees to forfeiture as outlined in the forfeiture allegation of the Indictment. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 4 of the Indictment as to this Defendant.

1

2. The essential elements of Count 1 are as follows:

(a) First, that two or more persons formed, reached, or entered into an agreement or understanding to distribute fluorofentanyl, a Schedule I controlled substance; fentanyl, a Schedule II controlled substance; and oxycodone, a Schedule II controlled substance.

(b) Second, that at some time during the existence or life of the agreement or understanding, the Defendant knew the purpose of the agreement and deliberately joined the agreement or understanding.

(c) Third, that the amount of fluorofentanyl was at least 10 grams and the amount of fentanyl was at least 40 grams.

3. The essential elements of Count 5 are as follows:

(a) First, that the Defendant knowingly or intentionally possessed controlled substances.

(b) Second, that the substances were in fact fluorofentanyl (a Schedule I controlled substance) and fentanyl (a Schedule II controlled substance).

(c) Third, that the Defendant possessed the controlled substances with the intent to distribute them.

(d) Fourth, that the amount of fluorofentanyl was at least 10 grams and the amount of fentanyl was at least 40 grams.

4. The essential elements of Count 6 are as follows:

(a) First, that the Defendant committed the drug crimes charged in Counts 1 and 5, for which he may be prosecuted in a court of the United States.

(b) Second, that the Defendant knowingly or intentionally possessed a firearm.

(c) Third, that the possession of the firearm was in furtherance of the drug

trafficking crimes charged in Counts 1 and 5.

5. As to Counts 1, 5, and 6, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) The Defendant, Diquan KING, admits that he agreed with at least one other person to distribute Schedule I and II controlled substances in the Eastern District of Kentucky (EDKY). In June and July 2022, law enforcement utilized cooperating sources (CSs) to make controlled purchases of narcotics from KING's codefendants. On June 29, 2022, a co-defendant distributed approximately 56 grams of fentanyl to a CS in exchange for $2,800 in Madison County. During this transaction, the co-defendant informed the CS that if he were unavailable for future transactions, he would send someone to distribute narcotics to the CS. On July 19, 2022, a co-Defendant once again agreed to supply the CS with fentanyl in Madison County, Kentucky. A co-defendant distributed approximately 28 grams of a mixture or substance containing fluorofentanyl and fentanyl in exchange for $1,400.

(b) On September 9, 2022, KING agreed to distributed two ounces of heroin or fentanyl in exchange for $2,600. During this transaction, the CS inquired about purchasing four ounces of heroin/fentanyl in exchange for $5,000. KING stated that he would have to speak with someone else before that transaction could be arranged. The transaction with the CS was audio and video recorded. The Kentucky State Police (KSP) Laboratory tested one ounce and determined that it was 27.74 grams of a substance containing fentanyl (Schedule II) and tramadol (Schedule IV).

(c) On October 10, 2022, KING was traffic stopped near North Keenland Drive in Madison County. Upon contact with the vehicle, police immediately detected the odor of marijuana. Police observed a Glock handgun in the middle console, right next to the gear shift and to KING's right hand. The firearm was not in a holster. KING and a female passenger were directed to exit from the vehicle, and both complied. During a search of the vehicle, police found approximately two ounces of suspected fentanyl in a purse, along with a large stack of U.S. currency, later determined to be $3,653.00. KING advised officers

that the female subject had nothing to do with the drugs or money and that those items belonged to him. A black backpack was located behind the passenger's seat. Inside the backpack were multiple pill bottles containing suspected controlled substances. The KSP Laboratory tested two ounces of the suspected fentanyl. Approximately one ounce (27.9 grams) was found to contain a mixture of fentanyl, fluorofentanyl, and tramadol. A second ounce (27.7 grams) was found to contain a mixture of fentanyl and tramadol. As to the pills, approximately 68 grams of round, blue tablets marked "M,30" were found to contain fentanyl by the KSP Laboratory. The suspected fentanyl from the female passenger's purse was sent to the KSP Laboratory but was not tested. KING admits that he possessed the Glock .380 caliber firearm in furtherance of a drug crime; that is, KING possessed approximately 4 ounces of fentanyl, valued at approximately $5,600, with intent to distribute those drugs to others, and possessed the firearm to protect himself and the drugs.

6. The statutory punishment for Counts 1 and 5 is imprisonment for not less than 5 years nor more than 40 years, a fine of not more than $5,000,000, and a term of supervised release of not less than 4 years. The statutory punishment for Count 6 is imprisonment for not less than 5 years and not more than life imprisonment, which must run consecutively to any other sentence imposed, a fine of not more than $250,000, and a term of supervised release of not more than 5 years. A mandatory special assessment of $100 per count applies, and the Defendant will pay this $300 assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

7. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, Manual, will determine the Defendant's guidelines range.

  (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all the facts set forth in paragraph five.

  (c) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(5), the base offense level for Counts 1 and 5 is at least 28. The United States' position is that the converted drug weight for drugs attributed to the Defendant is at least 1,000 kilograms but less than 3,000 kilograms. The Defendant reserves the right to argue that the base offense level should be 28 rather than 30.

  (d) Pursuant to U.S.S.G. § 2K2.4 (b), the guideline sentence for Count 6 is 60 months, which must run consecutively to any other sentence imposed.

  (e) Pursuant to U.S.S.G. § 3E1.1(a) and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level pursuant to U.S.S.G. § 3E1.1(b) based on the Defendant's timely notice of intent to plead guilty.

8. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

9. The Defendant waives the right to file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2, and also waives the right to file a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

10. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

11. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that all this property is subject to forfeiture because a nexus exists between it and the offenses to which he is pleading guilty. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees to take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including, but not limited to, executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

12. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

13. The Defendant agrees to cooperate fully with the United States Attorney's Office and will make a full and complete financial disclosure. Within 30 days from his guilty plea, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving

the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

14. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant acknowledges that he understands this Agreement, that his attorney has explained it to him, and that his entry into this Agreement is voluntary.

PAUL C. McCAFFREY
ACTING UNITED STATES ATTORNEY

Date: 10/3/2025  By: *G. Todd Bradbury*
G. Todd Bradbury
Assistant United States Attorney

Date: 10-05-2025  *Diquan King*
Diquan King
Defendant

Date: 10/5/25  *Phillip C. Lawson*
Phillip C. Lawson
Attorney for Defendant

9